GARRISON, Judge.
This is an expedited appeal from a judgment of the district court dated June 17, 1985 and rendered in accordance with the suggested judgment and report of the Commissioner (John M. Holahan). From that judgment, plaintiff Lester G. “Rick” Landry appeals.
The judgment provides as follows:
“IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the exception be dismissed and that the Report of the Commissioner be made the judgment of the Court,
Accordingly,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Lester G. “Rick” Landry and against Dolly-Dean Martinez, in the full sum of $15,000.00, payable as follows: $10,000.00 together with interest from January 2, 1982; $4,500.00 together with interest from July 1, 1982 and $100.00 for each of five consecutive years together with interest from January 2 of each year commencing January 2, 1983;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Dolly-Dean Martinez and against Lester G. “Rick” Landry permanently enjoining Lester G. “Rick” Landry from acting or performing any functions of a casting director or agent involving the casting or booking of models, musicians, performing artists, etc. until five years from the date of this judgment, within the parishes of St. Bernard, Jefferson, Orleans and St. Tammany or from taking any action, or performing any functions otherwise stated in Article 4 of his agreement dated January 2, 1981.
Each party is to bear their respective costs. All other relief is denied.”
The Commissioner’s report provided as follows:
“The plaintiff filed a suit seeking the balance due on a contract of the sale of a business which was purchased by the defendant.
The defendant answered denying the debt, and reconvened seeking an injunction to effectuate an anti-competitive clause which forms part of the contract sale of the business.
FACTS AND OPINION
The business involved was incorporated but in reality it was a one man shop prior to its sale to the defendant.
It was stipulated that the sum of $15,-000.00 was not paid in accordance with the terms of the contract. It was argued that this amount should be reduced or eliminated altogether due to the plaintiff’s alleged breach of the anti-competitive clause.
Such clause reads as follows:
The Seller agrees that, from and after this closing, he will not, unless acting as an officer or employee of the Company, or with the Buyer’s prior written consent, directly or indirectly own, manage, operate, join, control or participate in or be connected as an officer, employee, partner, or otherwise with, any business under any name similar to the Company’s name, nor enter into a competitive business involving the booking of models, musicians, performing artists, etc. for a period of five (5) years from the date hereof, anywhere in the Greater New Orleans area, including the Parish of St. Bernard, Jefferson, Orleans and St. Tammany. That for a period of five years after this closing, he will not in any such manner directly or indirectly compete with, or become interested in any competitor, of the Company. The Seller acknowledges that the remedy at law for any breach by any of the foregoing will be inadequate, and that the Company and the Purchaser shall be entitled to injunc-tive relief.
The plaintiff argues that the business sold involved primarily, if not exclusively, the brokerage of ‘talent’ services to *1209 persons who might hire such. These persons are known as Casting Directors. On the showing made it appears that although a easting director is normally a full-time employee of a producer, such services can be performed by an agency relationship or free lance. This latter type of activity has been engaged in by the plaintiff throughout.
The business sold was engaged more or less as a labor contractor and maintained contact with persons who were desirous of being hired as models, artists, actors, etc. who were sent to casting directors who would ultimately choose the party or parties to be hired. While this side of the business was a substantial part of the services provided to talent; it is clear that some activity had taken place by the plaintiff as a casting agent hiring talent. Two of the plaintiffs witnesses opined that the work [sic] ‘casting’ was synonymous with ‘booking’.
It is axiomatic that the parties to a contract are bound by its terms and such is the law between the parties. In the instant matter the language of the anti-competitive clause is broad enough to state with accuracy that it was intended to apply to both sides of the ‘talent’ business — the providing of talent choices on one hand, and the selection and hiring of such choices on the other.
Consequently, the Court sees no reason why the contract should not be enforced.
While there was evidence of the plaintiff’s acting as a easting director or agent within the prescribed territory, there was no evidence offered which delineated damages with any precision. Consequently, while the Court sees no reason to grant monetary damages, it does see adequate reason to enjoin.
A suggested form of Judgment is enclosed. April 11th, 1985.”
On January 2, 1981 Lester G. “Rick” Landry and Dolly-Dean Martinez[1] entered into a credit sale of “Artists’ Representatives of New Orleans, Inc.” for $25,000.00, $10,000.00, of which was paid on that date.[2] The act of sale was not an authentic act in that it was not executed before a notary public. The act of sale provided as follows:
“THIS AGREEMENT made this 2nd day of January, 1981, by and between LESTER G. ‘RICK’ LANDRY, hereinafter called SELLER, and DOLLY-DEAN MARTINEZ, hereinafter called PURCHASER.
WITNESSETH:
WHEREAS the above parties have entered into an agreement, wherein the Seller agrees to sell and the Purchaser agrees to buy, all of the issued and outstanding corporate shares of stock in Artists’ Representatives of New Orleans, Inc., a Louisiana corporation engaged in the representation of models, actors and other artists, hereinafter called ‘The Company.’
NOW, THEREFORE, for and in consideration of mutual covenants contained herein, it is agreed as follows:
1. Seller hereby sells to Purchaser all of the issued and outstanding capital stock of Artists’ Representatives of New Orleans, Inc., represented by Certificate No. 10 for 90 shares, for the total sum of $25,000.00, which sum shall be paid in the following manner:
(a) Ten Thousand Dollars ($10,000.00) upon the execution of this agreement;
(b) Ten Thousand Dollars ($10,000.00) due and payable on January 2, 1982.
(c) Four Thousand Five Hundred Dollars ($4,500.00) payable on July 1, 1982, with the balance of $500.00 payable in five (5) equal and consecutive yearly installments of $100.00 each, commencing on the 2nd day of January, 1983 and yearly thereafter with the final payment of $100.00 due on January 2, 1987; said yearly payments are in consideration of seller not competing with purchaser.
2. Seller represents and warrants as follows:
*1210 (a) Seller hereby warrants that the said Certificate No. 10 of The Company is free and clear of all encumbrances, liens and liabilities, and that it is sold in negotiable form.
(b) Seller further warrants that the Company is a corporation duly organized, validly existing and in good standing under the laws of Louisiana, and that all amendments thereto to date have been certified by the Secretary of State of the State of Louisiana, and certified by The Company’s Secretary.
(c) Seller further warrants that he, and he alone, is the owner, free and clear of any encumbrances, of the aforementioned 90 shares of the Company’s common capital stock, and that there are no liens or taxes or liabilities due by the Company as of December 31, 1980.
(d) Seller further warrants that there is no pending litigation threatened or against, or relating to The Company in any manner whatsoever, including any type of tax litigation, whether civil or criminal.
(e) Seller further agrees to transfer to Purchaser all files and relevant information pertaining to Artists’ Representatives of New Orleans, Inc.
3. In the event of any type of liability, taxes, liens or encumbrances due by the Company prior to this act of sale, said amounts due after necessary judicial process or by agreement, shall be paid from the amounts due the Seller from the future payments, as outlined in Paragraph 1.
4. The Seller agrees that, from and after this closing, he will not, unless acting as an officer or employee of the Company, or with the Buyer’s prior written consent, directly or indirectly own, manage, operate, join, control, or participate in, or be connected as an officer, employee, partner, or otherwise with, any business under any name similar to the Company’s name, nor enter into a competitive business involving the booking of models, musicians, performing artists, etc. for a period of five (5) years from the date hereof, anywhere in the
Greater New Orleans area, including the Parish of St. Bernard, Jefferson, Orleans and St. Tammany. That for a period of five years after this closing, he will not in any such manner directly or indirectly compete with, or become interested in any competitor, of the Company. The Seller acknowledges that the remedy at law for any breach by any of the foregoing will be inadequate, and that the Company and the Purchaser shall be entitled to injunctive relief.
5. The Seller declares and warrants that Certificate No. 10 for 90 shares which is herein transferred constitutes all of the issued and outstanding stock of Artists’ Representatives of New Orleans, Inc.
6. This agreement is being delivered, and is intended to be performed, in the State of Louisiana, and shall be construed and enforced in accordance with the laws of this State.
IN WITNESS whereof the parties have duly executed this agreement, in duplicate original.”
Martinez first met Landry in 1978 on the set of “Murder at the Mardi Gras.” Martinez’s daughter was an actress. They were introduced by the Assistant Director, Steve Perry who told Martinez that she needed to meet Landry because he did a lot of casting for the movies that came to New Orleans. Shortly thereafter Martinez’s daughter signed with Landry’s company, Artists’ Representatives (hereinafter AR).
Mrs. Martinez was married to a doctor and in the summer of 1980 Landry went to his office as a patient. Landry mentioned that he was interested in selling AR and Dr. Martinez responded that his wife might be interested.
Mrs. Martinez and Landry first met to discuss a sale in August of 1980, and continued meeting through October, November, and December.
Landry’s reason for selling was that he wanted to enter another line of work. He expected to be hired by a studio that was supposed to be built in Hammond, Louisi *1211 ana by the same people who had built the Osmond Studio in Utah. He expected to enter the field of record promotion and also do some fundraising.
Martinez stated that she felt the entire “recording studio” idea was “pie in the sky” at the time because there was no other information about it circling within the industry. Apparently, the “studio” was never built.
Gradually Mrs. Martinez discovered that Landry was hiring actors and actresses for jobs. Accordingly, on June 12, 1981 counsel for Martinez wrote the following letter: “Dear Mr. Landry:
This is to inform you that I represent Mrs. Dolly Dean Martinez and • Artist Representatives of New Orleans, Inc. in reference to the contract and credit sale of stock dated January 2, 1981.
My clients have been made aware and has [sic] evidence to believe that you are in breach of this contract by violating paragraph 4 of the said contract, particularly in the hiring of talent in the recent movie, Cat People, which was on location in New Orleans from April 27 through May 21.
It was my clients’ distinct understanding that you were to be a casting director and would hire the talent directly through Artist Representatives of New Orleans, Inc. or, for that matter, any other agency. Paragraph 4 of the contract specifically states that you are not to engage in that type of business. Therefore, since you have violated this agreement which has caused my clients to suffer monetary damages, my clients have decided that in their best interest they will refuse to further honor the contract.
You may construe this letter to mean that there will be no further payment whatsoever forthcoming in connection with this contract.”
Approximately eight months later, on February 2, 1982, Landry filed suit for the balance of the credit sale. He also sought loss of business opportunity damages.
Martinez answered with a general denial and a reconventional demand, seeking enforcement of the non-competition clause via an injunction as provided in the Act of Sale, as well as damages for loss of business resulting therefrom.
After hearing before the Commissioner, Landry raised an exception to the Commissioner’s report which was heard before the trial judge. The trial court denied Landry’s exception and adopted the judgment and report of the Commissioner as its own. From that judgment, Landry appeals.
On appeal, Landry raises two specifications of error:
1. the lower court erred in construing the language used in the Act of Sale, namely “booking” as applying to both sides of the talent industry;
2. the trial court erred in the amount of time for which the permanent injunction was granted.
At trial, Pauline Morgan, Executive Secretary of AFTRA and the Union’s Chief Administrative Officer in New Orleans, testified that the industry recognizes three categories:
1. Talent Agents;
2. Casting Directors;
3. Casting Agents.
“Talent agents” are employed by the performer and are paid a commission by the performer. Talent agents attempt to “sell” their performers for a particular job. Under Louisiana agency law, the contractual relationship is that the performer is the principal and the talent agent is, obviously, the agent. Talent agents never come to the set to oversee actual production of the movie.
“Casting Directors” are usually full-time salaried on staff employees of a production company. They are usually hired by the producer or one of the producer’s subordinates. The “casting director” hires people for particular jobs in a particular movie, thus vis-a-vis a “talent agent”, the “casting director” is the buyer of the actors or actresses that the “talent agent” is selling to him. “Casting Directors” are on the set *1212 and help oversee production by telling people when and where to check in and out, where to go, and by handling payment to the actors.
A “Casting Agent” is usually a local person hired on sight or on location. Casting Agents hire extras and minor character role players for location shootings. They are generally not full-time salaried on staff employees of the production company, but rather are free-lance independent contractors with the production company and then only for the short-term duration of the on location shoot. In New Orleans, it is common for talent agents to be hired as local casting agents when an out-of-town movie production company shoots location shots here. When a local talent agent is hired as a casting agent, he contacts his principals (the actors he represents) as well as all other local talent agents who in turn contact their principals. The casting agent tentatively hires the extras and minor characters, subject to review by the casting director and production company employees. In all other aspects “casting agents” and “casting directors” perform the same job.
Mrs. Martinez testified that when Landry sold her the agency, he told her that AR did a great deal of “casting agent” work when movie companies came to the City. Mrs. Martinez testified that she was particularly looking forward to handling the “casting agent” business done by AR.
At trial, Landry spent a great deal of time drawing the distinctions between “casting directors”, “casting agents”, and “talent agents.” It was Landry’s contention that AR was a “talent agent” and had never acted as a “casting agent.” Landry further argued that he now acts only as a “casting agent” or “casting director” and that those two terms are synonymous.
The Act of Sale, however, does not discuss “talent agents” or “casting agents” or “casting directors.” The Act of Sale provides that Mr. Landry:
“... will not ... enter into a competitive business involving the booking of ... performing artists ... That for a period of five years after this closing, he will not in any such manner directly or indirectly compete with or become interested in any competitor of the Company ... the Company and the Purchaser shall be entitled to injunctive relief.”
Throughout the hearing, the Commissioner asked various witnesses the meaning of “booking”. The witnesses consistently testified that booking was used in two senses: the talent agent “booked” talent into a club, film, commercial, etc. and the club owner, filmmaker, etc. “booked” talent into his club, film etc. Thus the Commissioner correctly concluded that the term of art of the industry, “booking”, referred to both sides of the talent industry.
Evidence was presented indicating that AR had acted as a “casting agent” prior to the date of the Act of Sale and evidence was likewise introduced indicating that Mr. Landry worked as a “casting agent” after the date of the Act of Sale.
Thus it does not appear that the trier of fact was manifestly erroneous in his determinations. Accordingly, the judgment below is affirmed on this point.
Turning to the second specification of error, appellant argues that the trial court erred by “extending” the noncompetition period when he. granted the permanent injunction for a period of five years.
Appellant argues that the five years should run from the date of the Act of Sale, which is the non-competition period he agreed to therein. Thus the originally contemplated period was to run January 2, 1981 through January 2, 1986 inclusive. It is apparent that the time period is now past and the issue is moot.
For the reasons discussed, the judgment of the district court is affirmed in part and reversed in part, as follows:
“IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the exception be dismissed and that the Report of the Commissioner be made the judgment of the Court,
*1213 Accordingly,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Lester G. “Rick” Landry and against Dolly-Dean Martinez, in the full sum of $15,000.00, payable as follows: $10,000.00 together with interest from January 2, 1982; $4,500.00 together with interest from July 1, 1982 and $100.00 for each of five consecutive years together with interest from January 2 of each year commencing January 2, 1983;
Each party is to bear their respective costs. All other relief is denied.”
AFFIRMED IN PART; REVERSED IN PART.

. Defendant’s name was incorrectly spelled in the case caption as "Martin".

. Stipulated. (Trans.Vol. II pp. 5, 10).